## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION
## C.A. No. 5:20-cv-02882-JD-KDW

Johnny Mack Kinder,

                      Plaintiff,

         v.

South Carolina Department of Corrections;
Bryan P. Stirling, Michael McCall, Dennis
Patterson, Colie L. Rushton, Barry J. Tucker,
Tim Riley, Wantonta Golden, Donald P.
Keatley, Kellan B. Mills, Shannon Moore,
Robert Williams, Jr., Cory A. Sanders,
Jeffery D. West, Jr., Mark Pettit, Vasily
Chernyak, Jr., and John Doe and Jane Doe 1-
25,

                      Defendants.

## FIRST AMENDED COMPLAINT
### (JURY TRIAL DEMANDED)

       Plaintiff Johnny Mack Kinder, by and through his undersigned counsel and complaining of the above-named Defendants, alleges and states as follows:[1]

### JURISDICTION AND VENUE

       1.       This action is an action for money damages brought pursuant to 42 U.S.C. § 1983, et seq., and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the South Carolina Department of Corrections and individual Defendants.

---

[1]  Discovery is ongoing and Defendants have not yet fully responded to Plaintiff's First Set of Interrogatories and Requests for Production.  Plaintiff is filing his First Amended Complaint in compliance with the current scheduling order, but reserves the right to seek permission to further amend the Complaint should it become necessary as discovery proceeds.

2.     Plaintiff initially filed his Summons and Complaint in state court on June 29, 2020, and Defendants removed the Complaint to federal court on August 7, 2020.

3.     Subject matter jurisdiction is conferred upon the Court by 28 U.S.C. § 1331; 28 U.S.C. § 1367 (a), (b), (c), (d); 28 U.S.C. § 1343; and 28 U.S.C. §§ 2201 and 2202.

4.     The allegations set forth in this Complaint occurred in Spartanburg County, South Carolina; therefore, venue is proper in this District.

## PARTIES

5.     Plaintiff Johnny Mack Kinder is an inmate of the South Carolina Department of Corrections currently housed at Lee Correctional Institution.

6.     Defendant South Carolina Department of Corrections ("SCDC") is a governmental agency existing under the laws of the State of South Carolina which operates prisons throughout the state, including Tyger River Correctional Institution ("Tyger River CI"). Tyger River CI is a Level 2 medium-security institution.

7.     At all times mentioned in the Complaint, the Defendant Bryan P. Stirling was the Director of SCDC. At all relevant times hereinafter mentioned, Director Stirling was acting individually as an employee and/or administrator of the SCDC, including Tyger River CI. Additionally, Director Stirling was in charge of the specific operations for all SCDC facilities, including Tyger River CI. For purposes of claims asserted under 42 U.S.C. § 1983, Director Stirling is being sued in his individual capacity under the color of state law. Upon information and belief, Director Stirling had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised other Defendants who had direct contact with Plaintiff or had knowledge of the above.

2

8.    During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Director Stirling, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Director Stirling had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff.  Further, the response of Director Stirling to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

9.    Upon information and belief and during the relevant time period, Defendant Michael McCall was the Deputy Director of Operations of SCDC.  At all relevant times hereinafter mentioned, McCall was acting individually as an employee and/or administrator of SCDC, including Tyger River CI.  For purposes of claims asserted under 42 U.S.C. § 1983, McCall is being sued in his individual capacity under the color of state law.  Upon information and belief, McCall had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff,  and supervised others who had direct contact with Plaintiff or had knowledge of the above.

10.    During the time period in question, Plaintiff's Constitutional rights were well established and well known to McCall, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, McCall had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to

Plaintiff. Further, the response of McCall to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by the Plaintiff.

11.     Upon information and belief and during the relevant time period, Defendant Dennis Patterson was the Assistant Deputy Director of Operations of SCDC. At all relevant times hereinafter mentioned, Patterson was acting individually as an employee and/or administrator of SCDC, including Tyger River CI. For purposes of claims asserted under 42 U.S.C. § 1983, Patterson is being sued in his individual capacity under the color of state law. Upon information and belief, Patterson had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

12.     During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Patterson, including, and not limited to, the Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Patterson had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff. Further, the response of Patterson to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by the Plaintiff.

13.    Upon information and belief and during the relevant time period, Defendant Colie L. Rushton was the Director of the Division of Security for SCDC. At all relevant times hereinafter, mentioned Rushton was acting individually as an employee and/or administrator of the SCDC, including Tyger River CI. For purposes of claims asserted under 42 U.S.C. § 1983, Rushton is being sued in his individual capacity under the color of state law. Upon information and belief, Rushton had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

14.    During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Rushton, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Rushton had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff. Further, the response of Rushton to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

15.    Upon information and belief and during the relevant time period, Defendant Barry J. Tucker was the Warden or Assistant Warden at Tyger River CI. At all relevant times hereinafter, mentioned Tucker was acting individually as an employee and/or administrator of the SCDC, including Tyger River CI. For purposes of claims asserted under 42 U.S.C. § 1983, Tucker is being sued in his individual capacity under the color of state law. Upon information and belief,

5

Tucker had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

16.     During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Tucker, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Tucker had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff. Further, the response of Tucker to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

17.     Upon information and belief and during the relevant time period, Defendant Tim Riley was the Warden at Tyger River CI. At all relevant times hereinafter, mentioned Riley was acting individually as an employee and/or administrator of the SCDC, including Tyger River CI. For purposes of claims asserted under 42 U.S.C. § 1983, Riley is being sued in his individual capacity under the color of state law. Upon information and belief, Riley had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

18.     During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Riley, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment.

Additionally, Riley had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff.  Further, the response of Riley to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

19.     Upon information and belief and during the relevant time period, Defendant Wantonta Golden was the Major of correctional officers and staff at Tyger River CI.  At all relevant times hereinafter, mentioned Golden was acting individually as an employee and/or administrator of the SCDC, including Tyger River CI.  For purposes of claims asserted under 42 U.S.C. § 1983, Golden is being sued in her individual capacity under the color of state law.  Upon information and belief, Golden had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

20.     During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Golden, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Golden had actual and/or constructive knowledge that her subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff.  Further, the response of Golden to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by her as alleged herein; and there

was a causal link between her actions and/or inactions and the Constitutional injury suffered by Plaintiff.

21.     Upon information and belief and during the relevant time period, Defendant Donald P. Keatley was a Captain of correctional officers and staff at Tyger River CI.  At all relevant times hereinafter, mentioned Keatley  was acting individually as an employee and/or administrator of the SCDC, including Tyger River CI.  For purposes of claims asserted under 42 U.S.C. § 1983, Keatley is being sued in his individual capacity under the color of state law.  Upon information and belief, Keatley had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff,  and supervised others who had direct contact with Plaintiff or had knowledge of the above.

22.     During the relevant time period,  Plaintiff's Constitutional rights were well established and well known to Keatley, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Keatley had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff.  Further, the response of Keatley to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

23.     Upon information and belief and during the relevant time period, Defendant Kellan B. Mills was a Lieutenant of correctional officers and staff at Tyger River CI.  At all relevant times hereinafter, mentioned Mills was acting individually as an employee and/or administrator of the

SCDC, including Tyger River CI. For purposes of claims asserted under 42 U.S.C. § 1983, Mills is being sued in his individual capacity under the color of state law. Upon information and belief, Mills had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

24.     During the relevant timeperiod, Plaintiff's Constitutional rights were well established and well known to Mills, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Mills had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff. Further, the response of Mills to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

25.     Upon information and belief and during the relevant time period, Defendant Shannon Moore was a Lieutenant of correctional officers and staff at Tyger River CI. At all relevant times hereinafter, mentioned Moore was acting individually as an employee and/or administrator of the SCDC, including Tyger River CI. For purposes of claims asserted under 42 U.S.C. § 1983, Moore is being sued in his individual capacity under the color of state law. Upon information and belief, Moore had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

26.     During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Moore, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Moore had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff.  Further, the response of Moore to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

27.     Upon information and belief and during the relevant time period, Defendant Robert Williams, Jr., was a Lieutenant of correctional officers and staff at Tyger River CI.  At all relevant times hereinafter, mentioned Williams was acting individually as an employee and/or administrator of the SCDC, including Tyger River CI.  For purposes of claims asserted under 42 U.S.C. § 1983, Williams is being sued in his individual capacity under the color of state law. Upon information and belief, Williams had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

28.     During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Williams, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Williams had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to

Plaintiff. Further, the response of Williams to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

29.    Upon information and belief and during the relevant time period, Defendant Cory A. Sanders was a Sergeant of correctional officers and staff at Tyger River CI. At all relevant times hereinafter, mentioned Sanders was acting individually as an employee and/or administrator of the SCDC, including Tyger River CI. For purposes of claims asserted under 42 U.S.C. § 1983, Sanders is being sued in his individual capacity under the color of state law. Upon information and belief, Sanders had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

30.    During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Sanders, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Sanders had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff. Further, the response of Sanders to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

11

31.    Upon information and belief and during the relevant time period, Defendant Jeffery D. West, Jr., was Sergeant of correctional officers and staff at Tyger River CI.  At all relevant times hereinafter, mentioned West was acting individually as an employee and/or administrator of the SCDC, including Tyger River CI.  For purposes of claims asserted under 42 U.S.C. § 1983, West is being sued in his individual capacity under the color of state law.  Upon information and belief, West had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

32.    During the relevant time period, Plaintiff's Constitutional rights were well established and well known to West, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment.  Additionally, West had actual and/or constructive knowledge that he was engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff.  Further, the response of West to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

33.    Upon information and belief and during the relevant time period, Defendant Mark Pettit was a Correctional Officer at Tyger River CI.  At all relevant times hereinafter, mentioned Pettit was acting individually as an employee of the SCDC, including Tyger River CI.  For purposes of claims asserted under 42 U.S.C. § 1983, Pettit is being sued in his individual capacity under the color of state law.  Upon information and belief, Pettit had direct knowledge of the unsafe conditions present during the time period in question and had direct knowledge of the substantial risk of serious harm to Plaintiff.

34.    During the relevant time  period, Plaintiff's Constitutional rights were well established and well known to Pettit, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Pettit had actual and/or constructive knowledge that he was engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff.  Further, the response of Pettit to that knowledge was so inadequate as to show  deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there  was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

35.    Upon information and belief and during the relevant time period, Defendant Vasily Chernyak, Jr., was a Correctional Officer at Tyger River CI.  At all relevant times hereinafter, mentioned Chernyak was acting individually as  an employee of the SCDC, including Tyger River CI.  For purposes of claims asserted under 42 U.S.C. § 1983, Chernyak is being sued in his individual capacity under the color of state law.  Upon information and belief, Chernyak had direct knowledge of the unsafe conditions present during the  time period in question and  had direct  knowledge  of  the  substantial  risk  of  serious  harm  to Plaintiff.

36.    During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Chernyak, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Chernyak had actual and/or constructive knowledge that he was engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff. Further, the response of Chernyak to that knowledge was so inadequate as to show  deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there  was a

causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

37.    Upon information and belief and during the relevant time period, Defendants John Doe and Jane Doe 1-25 are administrators or correctional officers and staff at Tyger River CI whose identity is not presently known to Plaintiff.  At all relevant times hereinafter, mentioned John Doe and Jane Doe 1-25 were acting individually as an employee and/or administrator of the SCDC, including Tyger River CI.  For purposes of claims asserted under 42 U.S.C. § 1983, John Doe and Jane Doe 1-25 are being sued in their individual capacity under the color of state law.  Upon information and belief, John Doe and Jane Doe 1-25 had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

38.    During the relevant time period, Plaintiff's Constitutional rights were well established and well known to John Doe and Jane Doe 1-25, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment.  Additionally, John Doe and Jane Doe 1-25 had actual and/or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff.  Further, the response of John Doe and Jane Doe 1-25 to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by them as alleged herein; and there was a causal link between their actions and/or inactions and the Constitutional injury suffered by Plaintiff.

39.    At all times mentioned in the Complaint, Defendants Barry J. Tucker (Warden and Assistant Warden at Tyger River CI), Tim Riley (Warden at Tyger River CI), Wantonta

Golden (Major at Tyger River CI), Donald P. Keatley (Captain at Tyger River CI), Kellan B. Mills (Lieutenant at Tyger River CI), Shannon Moore (Lieutenant at Tyger River CI), Robert Williams, Jr. (Lieutenant at Tyger River CI), Cory A. Sanders (Sergeant at Tyger River CI), Jeffery D. West, Jr., (Sergeant at Tyger River CI), Mark Pettit (Correctional Officer at Tyger River CI), and Vasily Chernyak, Jr. (Correctional Officer at Tyger River CI) were supervisors, administrators, and/or employees of SCDC, some of whom who supervised other employees at the Tyger River CI.  Upon information and belief, these Defendants had direct contact with Plaintiff, had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, or supervised other Defendants who had direct knowledge of the above.  These Defendants had the obligation and opportunity to protect Plaintiff from physical harm.

40.     At all times mentioned in the Complaint, and upon information and belief, Donald P. Keatley (Captain at Tyger River CI), Kellan B. Mills (Lieutenant at Tyger River CI), Shannon Moore (Lieutenant at Tyger River CI), Robert Williams, Jr. (Lieutenant at Tyger River CI), Cory A. Sanders (Sergeant at Tyger River CI), Jeffery D. West, Jr., (Sergeant at Tyger River CI), Mark Pettit (Correctional Officer at Tyger River CI), and Vasily Chernyak, Jr. (Correctional Officer at Tyger River CI) were on duty or present on December 1, 2018, the date when Plaintiff was assaulted and grievously injured at Tyger River CI.

41.     A more detailed description of Defendants' contacts with the Plaintiff and knowledge of the substantial risks is set out below.

## **FACTUAL ALLEGATIONS**

42.     On the main page of its website and in posters throughout its prisons, SCDC

describes its mission as follows:

The employees of the South Carolina Department of Corrections will be seen as a progressive force that works together to ensure the safety of each other, to improve the lives and meet legitimate needs of the inmates, and prepare them for re-entry into society.





## Safety, Service, Stewardship

The mission of the South Carolina Department of Corrections is: Safety--we will protect the public, our employees, and our inmates. Service--we will provide rehabilitation and self-improvement opportunities for inmates. Stewardship--we will promote professional excellence, fiscal responsibility, and self-sufficiency.



43.     Defendant SCDC, by and through its employees and agents, owes a duty of care

to Plaintiff and other inmates, including, among other things, duties to provide a properly

secured and reasonably safe environment, to ensure adequate staffing, prevent overcrowding,

prevent criminal gang activity, prevent inmates from making or possessing illegal drugs and

dangerous inmate-created weapons, and to properly secure and monitor prison dorms such that

inmates are prevented assaulting other inmates.

16

44.    Plaintiff's injuries were proximately caused by the negligent, grossly negligent, reckless, willful and wanton, and deliberately indifferent acts and omissions of Defendant SCDC, and by and through the individual Defendants as its employees and agents, and Defendants breached their duty of care to Plaintiff as alleged herein.

45.    As a result and because of Defendants' negligent, grossly negligent, reckless, willful, wanton and deliberately indifferent conduct, Plaintiff was severely injured, suffered needlessly, and suffered physical pain and suffering and emotional distress, loss of enjoyment of life, temporary and permanent scarring and disfigurement, temporary and permanent impairment and disability, loss of income and earning capacity, and medical expenses.  Plaintiff has suffered and will suffer damages now and in the future.

46.    The acts and omissions of Defendant SCDC and its employees and agents constitute one or more common law torts compensable under the South Carolina Tort Claims Acts, including but not limited to, negligence and gross negligence resulting in egregious and lifelong injures to Plaintiff.

47.    Furthermore, the acts and omissions of the individual Defendants constitute deliberate indifference to Plaintiff's health and safety under the Fourth and Eighth Amendments of the United States Constitution.  Plaintiff has a cognizable under 42 U.S.C. § 1983 as a result of the egregious and lifelong injuries he has suffered.

48.    Prison officials and employees have a federal constitutional duty under the Fourth and Eighth Amendments to protect inmates from violence at the hands of other prisoners. Plaintiff is informed and believes that (a) prison officials knew that Plaintiff was exposed to a substantial risk of serious harm to his physical safety; (b) Defendants failed to take reasonable measures to abate the risk; and (c) Plaintiff suffered serious injuries as a direct result thereof.

17

49.    Plaintiff is informed and believes that the employees of SCDC and staff at Tyger River CI (including, but not limited to, Bryan P. Stirling,  Michael McCall, Dennis Patterson, Colie L. Rushton, Barry J. Tucker, Tim Riley, Wantonta Golden, Donald P. Keatley, Kellan B. Mills, Shannon Moore, Robert Williams, Jr., Cory A. Sanders, Jeffery D. West, Jr., Mark Pettit and Vasily Chernyak, Jr.) who knew or should have known that their conscious failure to provide adequate security measures would result in unsafe conditions for the inmate population, had entered into a pattern and practice of:

a.    In consciously failing to provide an adequate or sufficient number of correctional officers to properly secure and monitor prison dorms;

b.    In consciously failing to prevent prison overcrowding;

c.    In consciously failing to enforce policies and procedures against the possession of contraband (including illegal drugs, cell phones and homemade weapons) and failing to conduct regular or random searches of cells and units for contraband;

d.    In consciously failing to sufficiently investigate or prevent criminal gang activity and related violence;

e.    In consciously failing to properly monitor, search and secure the inmates and cells in the dorms and other locations to prevent inmates from making or possessing contraband inmate-created weapons;

f.    In consciously failing to properly monitor, search and secure the inmates and cells in the dorm on the date of Plaintiff's assault and grievous injuries;

g.    In consciously failing to properly and timely respond to or investigate Plaintiff's reports that other inmates had threatened him;

h.  In consciously failing to protect Plaintiff and prevent one or more inmates from attacking him;

i.  In consciously failing to take timely and appropriate action to protect Plaintiff, such as transfer to another location or placement in protective custody;

j.  In consciously failing to properly monitor and secure doors to prevent the unsupervised and improper movement of inmates between areas;

k.  In consciously failing to respond with sufficient speed and force to prevent inmates from attacking other inmates;

l.  In consciously failing to properly monitor inmates, conditions and events in the dorms to prevent inmates from attacking other inmates;

m.  In consciously failing to properly observe and monitor inmates by performing required cell security checks, including on the date of Plaintiff's assault and grievous injuries;

n.  In consciously failing to properly hire, train or supervise sufficient employees or agents in order to ensure that inmates were properly monitored and necessary actions taken to maintain a reasonably safe environment (such as adequate staffing, prevention of overcrowding, prevention of criminal gang activity, performing cell security checks, keeping doors closed, and identifying and seizing contraband inmate-created weapons);

o.  In consciously failing to establish, enforce or follow appropriate policies and procedures to ensure that inmates were properly monitored and necessary actions taken to maintain a safe environment (such as adequate staffing, prevention of overcrowding, prevention of criminal gang activity, performing

cell security checks, keeping doors closed, and identifying and seizing

contraband inmate-created weapons);

p.  In consciously failing to properly hire, train, monitor and supervise employees

or agents in order to ensure the safety of inmates;

q.  In consciously failing to adhere to the policies and procedures of Defendant to

the extent that they exist;

r.  In consciously failing to properly classify and monitor inmates; or

s.  In other ways which will be discovered during the course of this litigation.

50.    A Security Staffing Assessment of South Carolina prisons performed in 2017-

2018 by an independent consultant at SCDC's request concluded that "[s]ecurity staffing levels

have not been aligned with meeting established workload responsibilities for an extended

period" of years.  Of 13 prisons analyzed, "on average the facilities were operating at 50.5% of

the recommended staffing level," the study stated.[2]

51.    At Tyger River CI, the approved number of funded full-time security staff

positions was 217, although SCDC's Division of Security had determined the prison should

have at least 233 security staff positions.  The study's author recommended that Tyger River CI

employ 350 full-time security staff positions, particularly to account for employees who are

absent, ill, in training or otherwise not available on a given day.  When the study was

conducted in late 2017, there were only 147 full-time security staff positions filled at Tyger

River CI – 68% of the funded positions and 42% of the recommended number of positions.

52.    Security staff positions at Tyger River CI have been declining consistently for

years, decreasing from 212 filled positions in 2011 to 138 in 2017.  The largest number of

---

[2]  This study is commonly referred to as the "Tom Roth report."

vacancies was in front-line positions, including correctional officers, who have the most frequent direct contact with inmates, the study stated.

53.     As a result of the inadequate staff for years at Tyger River CI, mandatory daily posts go unfilled and the required number of officers is not present in each housing unit. Officers routinely are required to work overtime or double shifts and monitor more than one housing unit.  Supervisors routinely must fill front-line positions and neglect other duties, and the prison is placed on full or partial lockdown due to staff shortages.  Contraband searches are not performed regularly or properly, if at all, causing the incidence of contraband such as illegal cell phones and homemade weapons to increase, the study stated.

54.     At Tyger River CI, a "risk factor that is often associated with staffing levels is the number of assaults that occur at a facility. . . . Having between zero and one [front-line staff] assigned to a 100-bed housing unit which contains no internal electronic surveillance support, creates an environment where the perceived opportunity  to commit an assault can initially go undetected.  This appears to be the case at Tyger River.  There is simply not enough staff supported by available surveillance equipment to consistently cover all the required areas and send the message to the inmate population that when involved in criminal activity the risk of being apprehended will be great," the study stated.

55.     "SCDC has experienced low correctional officer (CO) staffing levels for years. Low staffing levels affect the agency's ability to maintain safety within the prisons for staff, inmates and volunteers," according to an audit of SCDC conducted by the Legislative Audit Council in 2019.

56.    Auditors, using the Security Staffing Assessment's recommendation of 350 full-time security staff positions, similarly found that Tyger River CI had a vacancy rate of nearly 59% in 2018.

57.    Across SCDC, the vacancy rate for front-line CO staff with direct inmate contact was 27.5% in fiscal year 2017-2018.  Throughout that year, Tyger River CI was among three institutions that consistently had the highest front-line CO vacancy rate, ranging from 46% to 50% the entire year.

58.    "High front-line CO vacancy rates hinder SCDC's ability to maintain safe levels of operations and deliver necessary medical care and programs to inmates," the LAC audit stated.

59.    In a letter responding to auditors' recommendations, SCDC Director Stirling and his deputy director disagreed with the calculation of vacancy rates found by auditors, but acknowledged their awareness of the perennial staffing shortage.  "It is clear and agreed that SCDC does not have enough FTE [full-time equivalent] positions to meet our Authorized Strength Numbers, let alone the recommendation from the 2018 Staffing Study," Stirling stated.

60.    In fiscal year 2017-2018, Tyger River was among the prisons with the highest inmate-to-officer ratio – with 19 inmates for every one officer, the LAC audit stated.  Auditors observed one instance where a single officer was responsible for watching 132 inmates – a fact deemed worthy of mention in their report and the understated warning that "it may take a long time for the agency to respond to a riot or other major disturbance."  On information and belief, a single officer at Tyger River CI routinely oversees one or more dorms containing 100 to 200

or more inmates and dorms routinely are locked with inmates inside and no officer present for hours on end.

61.    Turnover among correctional officers at SCDC prisons increased from 26% to 34% from 2013 through 2017, the LAC audit stated.  The turnover rate for all institutional full time COs was 143% or nearly 1½ times the average number of COs employed over the period.

62.    As of June 2018, about 57% of COs at SCDC had one year of experience or less.  In total, about 72% of COs at SCDC had approximately three years' experience or less, the LAC audit stated.  The result is a lower overall level of work experience among staff.

63.    Auditors found that employees often fail to follow agency policies.  "Multiple staff members pointed to low staffing levels as the reason why staff 'cut corners' at the institutions," the LAC audit stated.  "Interviews with external correctional experts identified two primary reasons why SCDC staff are not following policies – staffing levels and agency culture. . . . "[T]raining employees on the new policy may be difficult with the agency's limited resources.  SCDC does not have time to pull staff off the floor to provide training."

64.    With regard to contraband detection effort, the auditors found that "[i]n the last decade, SCDC has not had adequate internal controls to ensure that COs are properly using technology and search methods to detect contraband before it enters its institutions and locate contraband that exists inside its institutions."  Required quarterly reports on the types and amounts of confiscated contraband are sent only sporadically, if at all, by prisons to SCDC's director of security.  Security audits, which examine a variety of areas including perimeter security, contraband and evidence management and searches, were done at only 5 of SCDC's 21 institutions in 2018-2019.

65.    Defendants have not provided training for contraband control officers for years and in fact, in 2017, SCDC officials moved to eliminate any requirement for training of such officers, according to the LAC audit.

66.    SCDC has not submitted its training curriculum for correctional officers to the S.C. Law Enforcement Training Council since 2016, which calls into question the certification status of all correctional officers certified after 2018, according to the LAC audit.  Furthermore, SCDC shortened basic training for correctional officers from six weeks to four weeks by eliminating "real life scenario" training.  Training was shortened so that officers could report to work sooner.

67.    Training of supervisors at SCDC may not adequately prepare them for their roles, the LAC audit stated.  Supervisors are not required to complete the training within the required period and SCDC was not able to provide records showing the average timeframe for training or that training was even offered.

68.    Although SCDC policy states that security staff should not be required to attend training while off duty, off-duty training is the agency's general practice as a result of staff shortages, the LAC audit stated.

69.    SCDC's constant staffing shortages means that correctional officers usually are not allowed to take a bona fide meal break, despite agency policy authorizing meal breaks. SCDC requires that officers work during their meal periods.  However, "long stretches without breaks leads to exhaustion, inefficiency, mistakes and burnout while breaks would have the inverse effect," the LAC audit stated.

70.    SCDC's efforts to recruit, advertise and attract potential employees jobs at state prisons have been inadequate for years, the LAC Audit stated.  While advertising expenditures

increased in recent years, the auditors recommended numerous ways for SCDC to better recruit, track and hire potential applicants.

71.     Upon information and belief, SCDC's Operations staff (including Defendants Stirling, McCall, Patterson and Rushton) and Tyger River CI management personnel (including Tucker, Riley, Golden, Keatley, Mills, Moore, Williams, Sanders and West) consciously deviated from security initiatives, which led to a further unsafe and unsecure environment, placing inmates at risk of serious and/or deadly injuries.  These deviations as outlined herein include, but are not limited to, extended staff responsibility for more than one post and lack of supervision and routine operations due to lack of front-line employees.  The deviations further included the Defendants' conscious failure to properly intervene when Plaintiff was being physically assaulted and nearly killed.

72.     Upon information and belief, the individual Defendants were well aware of the specific issues prior to Plaintiff's assault and grievous injuries.  Defendants were also equally aware of the existence of contraband within its facility, the understaffing issues and the inability to keep inmates supervised and protected as required.

73.     Defendants knew or should have known that their conscious failure to provide adequate monitoring and security measures would result in unsafe conditions for the inmate population.  Defendants had ample knowledge of the dangerous risk of harm to inmates when they were left unsupervised, unmonitored, and unprotected.

74.     Instead of ensuring that properly trained correctional officers were assigned and staffed to Tyger River CI, including Unit 7 where Plaintiff was housed, Defendants consciously and consistently allowed the substantial dangers to continue.

75.     Defendants had a federal Constitutional duty to protect inmates from violence at the hands of other persons when they knew or should have known that certain conditions presented a substantial safety risk.  At all times relevant, Defendants were not only on site at the facility, and supervising those who were on site, but were also well aware that the units in question were understaffed and contained personnel who were not properly trained.  They were also well aware that this created a highly dangerous situation for all inmates located in that area.  Even though they had the opportunity and obligation, they consciously failed to take any steps to ensure safety of Plaintiff and other inmates.

76.     In or about late 2018, Plaintiff, while housed in Unit 7 at Tyger River CI, received threats from one or more inmates whom he believed to be gang members.

77.     Plaintiff informed the officers and staff of the threats and requested that action be taken to protect him and ensure his safety.  Plaintiff's requests were ignored or rejected and he was not moved, placed in protective custody or otherwise protected.

78.     On or about December 1, 2018, Plaintiff remained in Unit 7 while nearly all other inmates attended a Christmas dinner prepared by a church group.

79.     On information and belief, no correctional officers remained on duty in the dorm, but instead attended the Christmas dinner or other duties in the prison.

80.     During that time, Plaintiff was attacked by one or more inmates in Unit 7 who nearly beat him to death.  Plaintiff suffered severe, permanent, disabling and lifelong injuries, including a traumatic brain injury and stroke.

81.     As a result of the severe beating and assault, Plaintiff suffered a right carotid artery dissection, which restricted the flow of blood to his brain and caused an acute ischemic

right middle cerebral artery, i.e., a restriction in the flow of blood in the brain that led to a massive stroke that has permanently affected his physical, mental and cognitive abilities.

82.    Plaintiff underwent an emergency right-sided decompressive craniotomy on December 5, 2018, in which a portion of his skull was removed to relieve the pressure on his brain and prevent him from dying.

83.     Plaintiff underwent a right-sided cranioplasty on January 7, 2019, in which his skull was repaired.

84.     Plaintiff was hospitalized at Spartanburg Regional Medical Center from December 2, 2018, to January 15, 2019.

85.    While at Spartanburg Regional Medical Center, Plaintiff was unable to even sit up in bed without substantial help from nursing or physical therapy staff.  Plaintiff for several weeks was unable to speak and was entirely unable to rise from his bed or walk.  Nevertheless, on information and belief, his arms and legs remained shackled and he was chained to the hospital bed 24 hours per day except for brief periods of therapy or other medical treatment.  In addition, two correctional officers were present in Plaintiff's hospital room 24 hours per day

86.    Plaintiff was incarcerated at Columbia Regional Care Center, a prison medical facility, from January 15, 2019, to February 13, 2020.

87.    Plaintiff, now age 42, is now permanently disabled with left-sided weakness and disability. He is wheelchair-bound, cannot walk and can barely stand.  His left arm and hand are contracted.  His ability to speak is affected and he has physical, mental and cognitive deficits as a result of the assault.  Before Plaintiff was assaulted, he was healthy and had no significant or disabling physical, mental or cognitive issues.

## FOR A FIRST CAUSEOF ACTION
### AGAINST DEFENDANT SCDC
### (NEGLIGENCE / GROSS NEGLIGENCE / NEGLIGENT HIRING /
### NEGLIGENT TRAINING / NEGLIGENT SUPERVISION / TORT CLAIMS ACT)

88.    Plaintiff incorporates each of the foregoing allegations as fully as if repeated herein verbatim.

89.    Defendant SCDC, by and through its employees an agents, owes a duty of care to Plaintiff and other inmates, including, among other things, duties to provide a properly secured and reasonably safe environment, to ensure adequate staffing, prevent overcrowding, prevent criminal gang activity, prevent inmates from making or possessing dangerous inmate-created weapons, and to properly secure and monitor prison dorms such that inmates are prevented assaulting other inmates

90.    Defendant SCDC is vicariously liable for the actions and omissions of its employees and agents.

91.    Plaintiff's injuries were proximately caused by the negligent, grossly negligent, reckless, willful and wanton acts of Defendant, by and through its employees and agents, which breached its duty of care to Plaintiff in one or more of the following ways:

   a.   In failing to provide an adequate or sufficient number of correctional officers to properly secure and monitor prison dorms;

   b.   In failing to prevent prison overcrowding;

   c.   In failing to enforce policies and procedures against the possession of contraband (including illegal drugs, cell phones and homemade weapons) and failing to conduct regular or random searches of cells and units for contraband;

28

d.  In failing to sufficiently investigate or prevent criminal gang activity and related violence;

e.  In failing to properly monitor, search and secure the inmates and cells in the dorms and other locations to prevent inmates from making or possessing contraband inmate-created weapons;

f.  In failing to properly monitor, search and secure the inmates and cells in the dorm on the date of Plaintiff's assault and grievous injuries;

g.  In failing to properly and timely respond to or investigate Plaintiff's reports that other inmates had threatened him;

h.  In failing to protect Plaintiff and prevent one or more inmates from attacking him;

i.  In failing to take timely and appropriate action to protect Plaintiff, such as transfer to another location or placement in protective custody;

j.  In failing to properly monitor and secure doors to prevent the unsupervised and improper movement of inmates between areas;

k.  In failing to respond with sufficient speed and force to prevent inmates from attacking other inmates;

l.  In failing to properly monitor inmates, conditions and events in the dorms to prevent inmates from attacking other inmates;

m.  In failing to properly observe and monitor inmates by performing required cell security checks, including on the date of Plaintiff's assault and grievous injuries;

n.   In failing to properly hire, train or supervise sufficient employees or agents in order to ensure that inmates were properly monitored and necessary actions taken to maintain a reasonably safe environment (such as adequate staffing, prevention of overcrowding, prevention of criminal gang activity, performing cell security checks, keeping doors closed, and identifying and seizing contraband inmate-created weapons);

o.   In failing to establish, enforce or follow appropriate policies and procedures to ensure that inmates were properly monitored and necessary actions taken to maintain a safe environment (such as adequate staffing, prevention of overcrowding, prevention of criminal gang activity, performing cell security checks, keeping doors closed, and identifying and seizing contraband inmate-created weapons);

p.   In failing to properly hire, train, monitor and supervise employees or agents in order to ensure the safety of inmates;

q.   In failing to adhere to the policies and procedures of Defendant to the extent that they exist;

r.   In failing to properly classify and monitor inmates; or

s.   In other ways which will be discovered during the course of this litigation.

92.   As a result and because of Defendant's negligent, grossly negligent, reckless, willful, wanton conduct, Plaintiff was severely injured, suffered needlessly, suffered physical pain and suffering and emotional distress, loss of enjoyment of life, temporary and permanent scarring and disfigurement, temporary and permanent impairment and disability, loss of income

30

and earning capacity, and incurred medical expenses. Plaintiff has suffered and will suffer damages now and in the future.

93.    Plaintiff is entitled to judgment against Defendant SCDC for actual and consequential damages for Defendant's acts and omissions of gross negligence.

**FOR A SECOND CAUSE OF ACTION**
**AGAINST INDIVIDUAL DEFENDANTS STIRLING, MCCALL, PATTERSON, RUSHTON, TUCKER, RILEY, GOLDEN, KEATLEY, MILLS, MOORE, WILLIAMS, SANDERS, WEST, PETTIT, CHERNYAK AND DOE**
**(VIOLATION OF 42 U.S.C. § 1983 / FOURTH AND EIGHTH AMENDMENTS / CRUEL AND UNUSUAL PUNISHMENT / SUPERVISORY LIABILITY)**

94.    Plaintiff incorporates each of the foregoing allegations as fully as if repeated herein verbatim.

95.    Defendants Stirling, McCall, Patterson, Rushton, Tucker, Riley, Golden, Keatley, Mills, Moore, Williams, Sanders, West, Pettit, Chernyak and Doe (collectively, "§ 1983 Defendants") were acting under the color or pretense of State law, customs, practices, usage or policy at all relevant times. As employees of SCDC, they had had certain duties imposed upon them with regard to Plaintiff.

96.    During relevant times, § 1983 Defendants were well aware of Plaintiff's constitutional rights including his right to be incarcerated in a properly secured and reasonably safe environment in which staffing was adequate staffing, overcrowding did not endanger him, criminal gang activity was prevented, inmates were prevented from making or possessing dangerous inmate-created weapons, and prison dorms were properly secured and monitored such that inmates are prevented assaulting other inmates

97.    Plaintiff was exposed to a substantial risk of serious harm to his health or safety and § 1983 Defendants knew of the potential harm and consciously disregarded it.

98.     During relevant times, § 1983 Defendants were consciously and deliberately indifferent to Plaintiff in the following ways

a.  In consciously failing to provide an adequate or sufficient number of correctional officers to properly secure and monitor prison dorms;

b.  In consciously failing to prevent prison overcrowding;

c.  In consciously failing to enforce policies and procedures against the possession of contraband (including illegal drugs, cell phones and homemade weapons) and failing to conduct regular or random searches of cells and units for contraband;

d.  In consciously failing to sufficiently investigate or prevent criminal gang activity and related violence;

e.  In consciously failing to properly monitor, search and secure the inmates and cells in the dorms and other locations to prevent inmates from making or possessing contraband inmate-created weapons;

f.  In consciously failing to properly monitor, search and secure the inmates and cells in the dorm on the date of Plaintiff's assault and grievous injuries;

g.  In consciously failing to properly and timely respond to or investigate Plaintiff's reports that other inmates had threatened him;

h.  In consciously failing to protect Plaintiff and prevent one or more inmates from attacking him;

i.  In consciously failing to take timely and appropriate action to protect Plaintiff, such as transfer to another location or placement in protective custody;

j.  In consciously failing to properly monitor and secure doors to prevent the unsupervised and improper movement of inmates between areas;

k.  In consciously failing to respond with sufficient speed and force to prevent inmates from attacking other inmates;

l.  In consciously failing to properly monitor inmates, conditions and events in the dorms to prevent inmates from attacking other inmates;

m.  In consciously failing to properly observe and monitor inmates by performing required cell security checks, including on the date of Plaintiff's assault and grievous injuries;

n.  In consciously failing to properly hire, train or supervise sufficient employees or agents in order to ensure that inmates were properly monitored and necessary actions taken to maintain a reasonably safe environment (such as adequate staffing, prevention of overcrowding, prevention of criminal gang activity, performing cell security checks, keeping doors closed, and identifying and seizing contraband inmate-created weapons);

o.  In consciously failing to establish, enforce or follow appropriate policies and procedures to ensure that inmates were properly monitored and necessary actions taken to maintain a safe environment (such as adequate staffing, prevention of overcrowding, prevention of criminal gang activity, performing cell security checks, keeping doors closed, and identifying and seizing contraband inmate-created weapons);

p.  In consciously failing to properly hire, train, monitor and supervise employees or agents in order to ensure the safety of inmates;

q.  In consciously failing to adhere to the policies and procedures of Defendant to the extent that they exist;

r.  In consciously failing to properly classify and monitor inmates; or

s.  In other ways which will be discovered during the course of this litigation.

99.    Section 1983 Defendants, to the extent that one or more are shown to be supervisors of other SCDC employees or agents, are liable to Plaintiff because the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and  unreasonable risk of constitutional injury to Plaintiff, the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to Plaintiff or tacit authorization of the alleged offensive practice, and there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by Plaintiff.

100.    As a direct and proximate result of § 1983 Defendants' acts of willful, malicious, conscious and deliberate indifference, Plaintiff suffered cruel and unusual punishment and deprivations of his rights secured by the  Eighth and Fourteenth Amendments of the United States Constitution.

101.    As a result, Plaintiff was severely injured, suffered needlessly, and suffered physical pain and suffering and emotional distress, loss of enjoyment of life, temporary and permanent scarring and disfigurement, temporary and permanent impairment and disability, loss of income and earning capacity, and medical expenses.  Plaintiff has suffered and will suffer damages now and in the future.

102.    As a result, Plaintiff is entitled to judgment against Defendants for actual, consequential and punitive damages.

103.   As a result, Plaintiff is entitled to recover attorney's fees and the costs of bringing this action.  <u>See</u> 42 U.S.C. § 1988.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action to which he is entitled by law to a trial by a jury of his peers.

WHEREFORE, having fully set forth his Complaint, Plaintiff prays that the Court grant by verdict or judgment an award of all damages he is entitled to recover under the law under all causes of action set forth in this Complaint, including actual damages, consequential damages, special damages and punitive damages in an amount to be determined by a jury, including attorney's fees and costs as allowed by any statute, court rule or applicable law, and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

PROFFITT & COX, LLP

*s/ David Proffitt*
David Proffitt, Federal ID No. 7503
140 Wildewood Park Drive, Suite A
Columbia, S.C.  29223-4311
Telephone:  (803) 834-7097
Fax: (888) 711-1057
Email:  dproffitt@proffittcox.com

Attorneys for Plaintiff

July 6, 2021